**NIGHT HAWK LEASING CO. v. BURNET, Commissioner of Internal Revenue.**

**No. 5348.**

Court of Appeals of District of Columbia.
March 14, 1932.

George E. H. Goodner, of Washington, D. C., for appellant.

Sewall Key, C. M. Charest, W. E. Davis, and John H. McEvers, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case involves deficiencies in corporation income taxes for the years 1923 to 1927, inclusive, in the total amount of $24,-245.64, arising from the disallowance by the commissioner of deductions claimed by appellant taxpayer for depletion in the operation of a certain mining claim.

Appellant is an Arizona corporation, and during the years in question it was engaged in mining copper on leased premises. In 1919 it leased from the Phelps Dodge Corporation, as owner, a certain claim area near Bisbee, Ariz., known as Fraction No. 1. The lease provided that in consideration of the mutual convenants therein contained the Phelps Dodge Corporation leased Fraction No. 1 to appellant for the purpose and with the right and privilege of carrying on mining operations and extracting ores therefrom, beginning May 27, 1919, and ending December 31, 1923, this term being subsequently extended until July 1, 1929. The lease provided for a specific royalty payable as the copper was removed, and required no acquisition cost, advance royalty, or bonus.

It appears that the amount of ore in Fraction No. 1 had been known with reasonable accuracy on March 1, 1913, and that the Phelps Dodge Corporation as owner of the tract at and before that date had been allowed by the commissioner a basic value or blanket depletion rate on the mineral content thereof at 4.11 cents per pound, which rate was not afterwards disturbed. In the year 1922, before production was begun under the lease, it was agreed between appellant and the Phelps Dodge Corporation that the depletion rate of 4.11 cents per pound should be divided between them, by the allowance of 3 cents a pound to appellant as lessee and 1.11 cents per pound to the lessor.

In accordance with this arrangement, appellant proceeded with its mining operations and took deductions in its returns on the ore mined, at the rate of 3 cents per pound, the lessor correspondingly taking deductions at the agreed rate of 1.11 cents per pound. This arrangement aggregated 4.11 cents per pound as the total allowance for depletion as theretofore determined by the commissioner.

These deductions of 3 cents per pound for depletion as claimed by appellant were totally disallowed by the commissioner and this decision was sustained upon appeal by the Board of Tax Appeals. It is now before us for review.

The law of the case is to be found in section 234 (a) (9) of the Revenue Act of 1921, 42 Stat. 227, 254, together with the corresponding sections of the Revenue Acts of 1924 and 1926 (26 USCA § 986 (a) (8).

Section 234 (a) (9), supra, provides that in computing the net income of a corporation subject to the tax imposed by section 230, in the case of mines a reasonable allowance for depletion shall be allowed, according to the peculiar conditions in each case, based upon cost, including cost of development not otherwise deducted, computed (1) upon fair market value, if the property was acquired prior to March 1, 1913; or (2) upon cost, if acquired after March 1, 1913; or (3) discovery value where discovery occurred after March 1, 1913.

The commissioner contends that these methods of computing depletion deductions are exclusive, and that appellant cannot in this case bring itself within any one of them, to wit, not within the first class, inasmuch as appellant's interest was not acquired prior to March 1, 1913, nor within the second class, inasmuch as appellant acquired the lease without acquisition cost, advance royalty, or bonus, subsequent to March 1, 1913, nor within the third class inasmuch as appellant's claim cannot be sustained upon the ground of "discovery."

[1, 2] This contention, however, is made inapplicable to the present case by the con-

cluding provision of each of these statutes, reading as follows: "In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee. * * * " Accordingly, if the owner of a claim be entitled under any one of these provisions to a depletion deduction in case the claim be operated by him alone, such deduction shall be equitably apportioned between such owner and lessee if the claim be operated by a lessee. This is the case regardless of whether the lease was acquired by the lessee prior to March 1, 1913, or subsequent to that date without "acquisition cost, advance royalty, or bonus," and without discovery by the lessee. The equitable interest of the lessee in the leased mine, upon which the depletion allowance depends, results from the mutual covenants of the parties in the lease. The lessee thereby acquired certain property rights in the mine.

In Lynch, Executrix, v. Alworth-Stephens Company, 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660, it is held that the interest of a corporate lessee of a mine under a lease for a term of years obliging it to mine a minimum tonnage of ore annually and to pay the lessor, owner of the fee, a stated royalty, is property within the meaning of section 12 (a) of the Income Tax law of September 8, 1916 (39 Stat. 767, 768) which provides that the net income of corporations organized in the United States shall be ascertained by deducting from gross income, among other things, "a reasonable allowance for the exhaustion * * * of property arising out of its use," and specifically, in case of mines, "a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year," etc. And that as the mining goes on, the property interest of the lessee in the mine, and that of the owner, are lessened, and in both cases the extent of this exhaustion, with the consequent deduction to be made under the above statute, is arrived at by determining the aggregate amount of the depletion of the mine, based upon the market value of the product, and allocating that amount in proportion to the interests of owner and lessee, severally considered.

The Revenue Act of 1916, 39 Stat. 756, under which the foregoing case arose, contained no specific provision for the rights of lessees; however, Congress obviously incorporated the principles above stated in the later acts.

In our opinion, therefore, the lessor and lessee were entitled to have the gross depletion deduction in the present case equitably apportioned between them. The amount of the total allowable deduction is beyond dispute inasmuch as it was fixed at 4.11 cents per pound by the commissioner, based upon the value of the claim on March 1, 1913, as provided by the statute. Sufficient facts are disclosed by the record to enable the commissioner to make an equitable apportionment of the total depletion between the lessor and lessee. Moreover, the parties themselves, acting, as it may be assumed, in good faith, established such an apportionment of the deduction between them by agreement, at the rate of 3 cents per pound to lessee and 1.11 cents per pound to lessor. The commissioner has not decided that such a division would be inequitable, nor that he is unable to make an equitable apportionment, but has held that the lessee is not entitled to any deduction whatsoever.

In our opinion the decision of the board should be reversed, and the cause be remanded for such further proceedings as are not inconsistent herewith. It is so ordered.

Reversed and remanded.