**GRANDVIEW MINES, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16638.

United States Court of Appeals
Ninth Circuit.

Aug. 16, 1960.

Joseph Nappi, Allan H. Toole, Spokane, Wash., for petitioner. Ellsworth C. Alvord, Lincoln Arnold, Washington, D. C., of counsel.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, James P. Turner, Atty., Dept. of Justice, for respondent.

Before HAMLEY and MERRILL, Circuit Judges, and EAST, District Judge.

MERRILL, Circuit Judge.

Grandview Mines has petitioned for review of a decision of the Tax Court which denied petitioner a redetermination of alleged deficiencies in income and excess profits taxes for the years 1950 through 1953. At issue is the extent of petitioner's right to claim percentage depletion allowance. More specifically, the

question posed by this petition may be stated as follows: Where the owner of mineral property grants to another the right to extract minerals in return for a percentage of net profits, has the owner the right to a depletion allowance upon a corresponding percentage of the gross income of the operator? The Commissioner ruled that the owner was limited to depletion allowance upon the net profits received by him. The Tax Court affirmed this ruling.

Section 114(b)(4)(A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114 (b)(4)(A), dealing with the basis for percentage depletion allowance, provides:

> "In general. The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—
>
> \*　\*　\*　\*　\*　\*
>
> "(iii) In the case of metal mines \*　\*　\* 15 per centum
>
> \*　\*　\*　\*　\*　\*
>
> "Of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property \*　\*　\*."

Grandview Mines is the owner of mineral property in the Metaline Mining District, Pend Oreille County, Washington. On June 5, 1936, it entered into an agreement with American Zinc, Lead and Smelting Company by which it granted American an option to buy its concentrating plant and the right to mine its mineral claims. American agreed to pay to Grandview a royalty measured by a percentage of the sales value of the products extracted from the mine. The option to purchase was duly exercised

and American proceeded to mine the claims under its agreement.

The agreement from time to time was amended in certain particulars. On December 9, 1949, American advised that it could not profitably continue to operate under fixed royalty provisions. The parties then agreed on January 26, 1950, that in lieu of fixed royalty Grandview would receive one-half of the net profits of the operation.

At the end of the first year of operation under this modified agreement, Grandview requested information from American as to the manner of computing the percentage depletion allowance on the sale of concentrates. American responded that it was computing the allowance as follows:

> "From the total sales value of zinc and lead concentrates is deducted the amount of royalty paid to your company. The remaining balance is the gross income in which the percentage depletion rate of 15% is applied."

Grandview notified American that it disagreed with this method and claimed the right to compute depletion upon the basis of fifty per cent of net sales. Following this dispute, the parties further amended their agreement. Grandview's share in the net profits was reduced to forty-six and one-half per cent, with the understanding that for purposes of computing depletion the gross income from the properties would be treated as distributed fifty-three and one-half per cent to American and forty-six and one-half per cent to Grandview. The agreement was made applicable as of January 1, 1950. To adjust for this retroactive application, Grandview agreed to pay to American the sum of $18,957.20 as an overpayment of 1950 royalties by American.[1]

---

1. The provisions of the agreement are as follows:

"A. Paragraph 1 of said Third Supplemental Agreement is hereby cancelled and the following paragraph 1 is substituted in its stead: (1) All of the provisions of said original lease and of said supplements thereto relating to royalties to be paid by American to Grandview are hereby abrogated and in lieu thereof from

and after January 1, 1950 and as long as this Third Supplemental Agreement remains in force, unless hereafter modified by agreement of the parties, American shall pay to Grandview in full settlement for all ores mined or extracted from any of Grandview's mining claims forty-six and one-half per centum (46½%) of all net profits derived from the operation

Thereafter, the parties reported depletion in accordance with their understanding. Grandview further deducted the $18,957.20 payment as a business expense. Grandview further claimed it was entitled to an exempt excess output credit under § 433(a)(1)(I) of the Excess Profits Tax Act of 1950, 26 U.S.C.A. Excess Profits Taxes, § 433(a)(1)(I), as a "producer of minerals," and took a deduction accordingly.

The Commissioner determined that Grandview had incorrectly computed its depletion allowance since its "gross income from the property" under § 114(b)(4) should have been limited to the amounts received under its lease with American. The Commissioner further determined that Grandview was not entitled to deduct the $18,957.20 payment as a business expense and was not entitled to an exempt excess output credit against excess profits tax. These deficiencies were all upheld by the Tax Court. The petition to this Court presents them all for our review.

Upon the first question—the right of Grandview to claim depletion allowance upon forty-six and one-half per cent of the gross profits of the operation—the decision of this Court in Commissioner v. Felix Oil Co., 9 Cir., 1944, 144 F.2d 276, 278, is controlling. There the identical proposition advanced by the taxpayer was rejected. This view would appear to be supported by language in Kirby Petroleum Co. v. Commissioner, 1945, 326 U.S. 599, 604–605, 66 S.Ct. 409, 412, 90 L.Ed. 343:

"If we assume that the only payment for the privilege of oil extraction made to the taxpayer lessors by the lessees was the portion of 'net income' paid under the leases, it would be clear that such payment of 'net income' would taxwise be rent or royalty paid by the lessees for the privilege of extraction."

Grandview draws our attention to § 23 (m) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(m), providing that in the case of mines a reasonable allowance for depletion will be granted as a deduction from gross income and stating: "In the case of leases the deductions shall be equitably apportioned between the lessor and lessee." Grandview contends that the fifty-three and one-half—forty-six and one-half split has been determined by agreement to be an equitable division and that this determination should be respected.

However, when the lessor's interest is in terms of net profit, the proper apportionment between lessor and lessee, as we have seen, is established by law and it is not available to the parties to avoid the tax consequences of their arrangement by agreeing to the contrary. Night Hawk Leasing Co. v. Burnet, 1932, 61 App.D.C. 92, 57 F.2d 612, upon which Grandview relies (and which does not involve percentage depletion based upon gross income to the taxpayer), cannot be read to support Grandview's contention in this respect.

Grandview contends that the net profits arrangement converted what was a lessor-lessee relationship into a joint venture; that the gross income of the operation must be held to be the gross income of the venture or partnership with depletion taken upon the whole of it. The Tax Court refrained from making a determination upon this point. We are asked to hold as matter of law that a joint venture existed or, in the alternative, to remand the case to the Tax Court for determination of the question.

We note first that the agreement does not purport to create a joint venture but a lease. The net profits are paid by American to Grandview in lieu of royal-

thereof by American. This change in division of profits results in American having overpaid Grandview for the accounting period of 1950 which has now been closed in the sum of $18,957.20 which amount Grandview shall repay to

American. This repayment shall not affect any refunds which may be due from Grandview to American for operations in 1951 which will be adjusted for the 1951 accounting period."

ty in full settlement for ores extracted. From the language in which the instrument is couched, it would appear that Grandview is not sharing in an enterprise but is being compensated for the extraction of ore.

■ Grandview asserts that we should look through form to substance. Substance here, however, is wholly consistent with form. A net profit basis for rent or royalty is not uncommon. See Burton-Sutton Oil Co. v. Commissioner, 1946, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062; Kirby Petroleum Co. v. Commissioner, supra. We see no reason therefore why this change in method of compensation should serve to convert what was a tenancy into a joint venture.

Grandview asserts that it had other rights and powers under the lease which support its contention for joint venture. In this respect, our attention is drawn to: (1) Grandview's right to inspect the books and records of American and the mine and mill; (2) American's duty to report to Grandview on the state of the operations; (3) the fact that Grandview employed a man to check the operation and report each month to the Board of Directors; (4) the fact that Grandview had written American detailing complaints about operation and suggesting ways in which costs might be reduced, to which letters American had replied in detail; (5) the fact that the lease provided control or check by Grandview over the amounts which American could charge for exploratory and development work, which control American had respected.

These rights had been possessed prior to 1950 and gave Grandview no control over American's operations. They are necessary to protect Grandview in its position as lessor-owner and its right to dispute the accuracy with which costs and net profits have been computed. They are wholly consistent with the tenancy which the form of the agreement purports to establish.

The question is whether "considering all the facts * * * the parties * * intended to join together in the present conduct of the enterprize." Commissioner v. Culbertson, 1949, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659. Here Grandview was concededly a lessor until 1950. The change in method of its compensation, entered into pursuant to the needs of American, is insufficient standing alone to demonstrate any intent to join together in a different status for the conduct of the enterprise. Cf. Roland P. Place, 1951, 17 T.C. 199, affirmed 6 Cir., 1952, 199 F.2d 373, certiorari denied 344 U.S. 927, 73 S.Ct. 496, 97 L.Ed. 714.

Grandview draws our attention to cases dealing with "carried interests" in oil leases. Commissioner v. J. S. Abercrombie Co., 5 Cir., 1947, 162 F.2d 338; Reynolds v. McMurray, 10 Cir., 1932, 60 F.2d 843, certiorari denied 287 U.S. 664, 53 S.Ct. 222, 77 L.Ed. 573. Grandview contends that its position here is analogous to that of a carried interest and that under the holdings in those cases the gross income of the operation as well as the net was treated as income of the carried party to the extent of its percentage share in the net.

These were cases of co-owners sharing in accordance with their respective ownership interests. The carried interest arrangement did not involve surrender of any economic interest in the deposit. This is emphasized by language in the Reynolds case, at page 844 of 60 F.2d:

"If the agreements in the instant case could be construed to be a relinquishment of the rights which Armstrong had in such leases in return for a percentage in the net profit, then plaintiff's contention would have merit. But such was not the effect of the agreements."

■ We conclude that the Tax Court was not in error in holding that Grandview's gross profits from the property were to be measured by its share of the net profits of the enterprise and that its depletion allowance was to be calculated upon that sum.

The second issue presented by Grandview in its petition relates to its right

to deduct as a business expense for the year 1951 the payment of $18,957.20 made that year. This payment was made pursuant to the terms of the modification of 1951, by which the respective shares of net profits were changed from fifty-fifty to forty-six and one-half— fifty-three and one-half. The agreement and these net profit shares were made effective as of the previous year and the payment in question was provided to compensate for the overpayment of royalty by American in 1950 when payment had been on a fifty-fifty basis.

■ Grandview contends that it is entitled to deduct this payment under § 23(a) of the Internal Revenue Code of 1939. It views the payment as a reduction of income.

If any income was reduced or adjusted, however, it was the 1950 income. In 1950 Grandview was under no obligation to make such adjustment. The payment was required because Grandview, in 1951, had agreed to pay it in consideration of the rights bestowed by the 1951 modification. The Tax Court ruled that the 1951 payment by Grandview was therefore in the nature of a capital expenditure. In this we agree. The Tax Court was not in error in upholding this deficiency.

Finally, Grandview contends that it is entitled to take a deduction for exempt excess output credit under § 433(a)(1)(I) of the Excess Profits Tax Act of 1950 as a "Producer of minerals," [2] and that the Tax Court erred in upholding deficiencies as to such deductions.

■ This contention is linked with Grandview's contention respecting depletion allowance in that here again Grandview asserts that it is a joint venturer

and accordingly is a producer of mineral. As we have heretofore concluded that Grandview is not a joint venturer, this contention falls. The Tax Court was correct in upholding this deficiency.

Affirmed.

---

2. "(I) Nontaxable income of certain industries with depletable resources. In the case of a producer of minerals, * * * or a lessor of mineral property, * * * as defined in section 453, there shall be excluded nontaxable income from exempt excess output of mines * * * provided in section 453 * * *."

Section 453(a) deals with definitions. (a) (1) provides:

"The term 'producer' means a corporation which extracts minerals from a mineral property * * * in which an economic interest is owned by such corporation. The term 'lessor' means a corporation which owns an economic interest in a mineral property * * * and is paid in accordance with the number of mineral units * * * recovered therefrom by the person to which such property * * * is leased."