**EQUITABLE LIFE INSURANCE COMPANY OF IOWA and Bankers Life Company, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 17784.**

United States Court of Appeals Eighth Circuit.

Jan. 15, 1965.

Rehearing Denied Feb. 9, 1965.

---

3. Rushing v. Wilkinson, 5 Cir. 1959, 272 F.2d 633, 638, n. 3.

Ross H. Sidney of Austin, Grefe &
Sidney, Des Moines, Iowa, made argu-
ment for appellants and filed brief with
J. R. Austin and Thomas W. Carpenter of

Austin, Grefe & Sidney, Des Moines, Iowa.

Harry Marselli, Atty., Tax Division, Dept. of Justice, Washington, D. C., made argument for appellee and Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, and Edward L. Rogers, Attys., Dept. of Justice, Washington, D. C., and also Donald A. Wine, U.S. Atty., Des Moines, Iowa, were on the brief.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

This action was filed jointly by Equitable Life Insurance Company of Iowa and Bankers Life Company for the purpose of recovering a portion of the amount of income taxes paid by them for the years 1956 and 1957.[1] The District Court denied recovery, 232 F.Supp. 150 (1964), and from the judgment dismissing the action Equitable and Bankers appealed. Both appellants were incorporated under the laws of Iowa, and are life insurance companies as defined in § 801 of the Internal Revenue Code of 1954.

The controversy emanates from the redemption or surrender for payment by appellants of Government Series G Bonds before maturity and the redemption or surrender for payment by Bankers of Government Investment Series A–1965 Bonds before maturity. Equitable redeemed its Series G Bonds having a face value of $1,400,000 on February 1, 1957, and as a condition precedent to such prematurity redemption was required to refund to the Government $40,400 which represented part of the interest it had received during the time it owned the bonds. Bankers redeemed its Series G Bonds having a face value of $1,500,000 during October and November 1956, and was required to refund $45,500 being a portion of the interest it had received on the bonds; on December 4, 1957, Bankers also redeemed its Series A Bonds having a face value of $3,300,000 and refunded $227,436 which represented a portion of the interest it had received on these bonds.

Neither of the appellants deducted any of the interest they had refunded on the bonds in computing their 1956 and 1957 income tax returns. However, in 1960 and 1961, and pursuant to § 6511, Int. Rev.Code 1954, timely claims for refunds were filed. Equitable claimed $3,151.20 of taxes paid for 1957. Bankers claimed $3,526.96 of taxes paid for 1956 and $17,619.44 of taxes paid for 1957. The denial of the claims by the District Director precipitated the filing of this action.

The broad question for determination is whether appellants could deduct or exclude the difference between the par value of the Government bonds and the lesser amounts which they received upon prematurity surrender or redemption of the bonds which difference represented a refund of interest previously received by appellants—either as losses or offsets against investment income or under the claim of right doctrine or as investment expenses. Appellants argue that inasmuch as they paid income taxes on bond interest as it was received, they were entitled upon refunding portions of that interest to offset the same against interest received in the years in which the refunds were made. Contrarily, the Government's position is that the refunds are properly characterized as losses, and since there is no statutory authority for a life insurance company to deduct such losses, the trial court properly decided the case.

An analysis of the form and provisions of the bonds, in part, may lend assistance in properly comprehending the question presented by this appeal.

The Series G Bonds were issued at par value and provided for: payment of interest thereon at the rate of 2½ percent per annum, payable semi-annually; for payment of the bonds at face value

1. Hereinafter, for the sake of brevity, we shall refer to Equitable Life Insurance Company as Equitable; to Bankers Life Company as Bankers, and to Equitable and Bankers jointly as appellants.

twelve years from issue date; and for redemption before maturity at the option of the owner at the current redemption value as shown in the table of redemption values appearing on each bond.

Series A–1965 Investment Bonds were issued on October 1, 1947, and are payable at face value 18 years thereafter or on October 1, 1965; they too provided for payment of interest at the rate of 2½ percent per annum payable semi-annually, and provided for payment before maturity at the option of the owner at the current redemption value as shown on the table of redemption values.

The rate of interest the bonds yielded depended on the period of time they were held prior to redemption. If a Series G Bond was redeemed four to four and one half years after issue date, the approximate investment yield on purchase price from issue date was 1.20 percent; similarly, if a Series A–1965 Bond was redeemed four to four and one half years after issue date, the approximate investment yield on purchase price from issue date was 1.10 percent. In order for bond owners to realize the full 2½ percent yield, they were required to hold the bonds until the maturity date thereof. Thus, inasmuch as the appellants received interest semi-annually, based on 2½ percent of the face amount of the bonds, they were required upon prematurity redemption of the bonds to make the appropriate refund to the government.

Before giving further consideration to the question before us, we briefly review the applicable statutes. During 1956 and 1957, the years here involved, taxation of life insurance companies was controlled by Section 801 et seq. of the Int.Rev.Code of 1954 as amended by the Life Insurance Company Tax Act of 1955, Ch. 83, 70 Stat. 36.[2]

In pertinent part, § 802 provides that "life insurance taxable income" shall be (a) the net investment income, minus the sum of certain items not here material, and (b) nonlife insurance taxable income. § 803 provides that gross investment income shall be "the gross amount of income received or accrued from interest, dividends, rents, and royalties" and gross income from any trade or business carried on by life insurance companies. § 803(c) defines the net investment income of a life insurance company as its gross investment income less deductions for (1) tax-free interest, (2) investment expenses paid or accrued during the taxable year, (3) real estate expenses, (4) depreciation, (5) depletion and (6) trade or business deductions. The trade or business deductions, § 803 (c)(6), allows deductions attributable to any trade or business, the income of which is includible in the company's investment income except losses for (a) sales or exchanges of capital assets, (b) sales or exchanges of property used in the trade or business and (c) losses from the compulsory or involuntary conversion of property used in the trade or business.

We also advert to general principles of law applicable here, which have been molded by judicial pronouncements. Tax exemptions and deductions do not turn upon general equitable considerations but depend upon legislative grace. Statutes authorizing tax exemptions and deductions are to be strictly and narrowly construed. See United States v. Olympic Radio and Television, 349 U.S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); Luehrmann's Estate v. C.I.R., 287 F.2d 10, 15 (8 Cir. 1961) and cases there cited. Ordinarily, life insurance companies have not been authorized to deduct losses granted other taxpayers because of the separate method of taxation provided for such companies.

---

2. While the 1955 Act was a stop-gap measure, its operation was extended to the taxable years 1956 and 1957 by the Act of July 24, 1956, c. 696, 70 Stat. 633, and the act of March 17, 1958, P.L. 85–345, 72 Stat. 36, respectively, pending a more complete revision of the taxation of life insurance companies, which was effected by the Life Insurance Company Income Tax Act of 1959, P.L. 86–69, 73 Stat. 112.

Helvering v. Manhattan Life Insurance, 71 F.2d 292 (2 Cir.1934); Southland Life Ins. Co., 30 B.T.A. 874, 877 (1934); Jefferson Standard Life Ins. Co., 25 B.T.A., 1335, 1339 (1932), rev. on other grounds, 72 F.2d 363 (4 Cir.1934); compare also, Service Life Ins. Co. v. U. S., 293 F.2d 72 (8 Cir.1961).

■ Implicit in the arguments advanced by appellants is recognition of the foregoing principles. Thus, they do not contend they were entitled to treat the refunds as losses and to deduct them as such. Rather, they claim such refunds may properly be offset against the interest received—investment income—for the years in question and that they are entitled to an adjustment in their gross income for these years. Appellants claim this right springs from the contract with the Government, said to accrue under the circulars promulgated by the Treasury Department prior to the issuance of the bonds.

The circulars relied upon were issued pursuant to the Second Liberty Bond Act, 31 U.S.C.A. § 752 which relates to Series G and Series A–1965 Bonds. The provision regarded by appellants as material reads as follows:

"Interest will cease at maturity, or in case of redemption before maturity, at the end of the interest period next preceding the date of redemption. A table of redemption values for each bond appears on its face, and the difference between the face amount of the bond and the redemption value fixed for any period represents an adjustment (or refund) of interest. Accordingly, if the owner exercises his option to redeem a bond

prior to maturity, the investment yield will be less than the interest rate on the bonds." (Par. 4 Treasury Dept. Circular No. 654, 1941 [Series G] and Par. 1 Treasury Dept. Circular No. 814, 1947 [Series A–1965]).

Appellants reason that the foregoing was "calculated to assure a prospective purchaser that while the interest would be fully taxable as received, if he found it necessary or desirable to exercise his right of redemption before maturity, his refund of a portion of that interest likewise would entitle him to a tax benefit."

Realistically, appellants are arguing that the circulars had the effect of amending the statutory scheme for the taxation of life insurance companies so as to permit such taxpayers to obtain tax advantages which are not permitted by statute. The weakness of this theory is manifested by a total lack of authority which directly or indirectly lends support therefor.

■ We believe as did the trial court, that the interest refunds regardless of the nomenclature used, constitute losses, and may be taken as deductions only if there is statutory sanction for such action.[3] Cf. Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855 (1939). The Internal Revenue Service has, for many years, consistently taken the position that refunds of interest are ordinary losses. I.T. 3504, 1941–42 Cum.Bull 93; Rev.Rul. 55–274, 1955–1 Cum.Bull. 279, and 1955–1 Cum.Bull. 280; Rev.Rul. 59–271, 1959–2 Cum.Bull. 70; Rev.Rul. 60–145, 1960–1 Cum.Bull. 182. I.T. 3504, dealt with tax consequences of refunds attending the prematurity re-

3. It is significant that in their claims for refunds, appellants seemed to recognize that the refunds constituted "losses." Equitable's claim stated, in part: "During the year 1957 the taxpayer suffered a $40,400 'loss' on Series G Bonds redeemed. Such a 'loss' is not a capital loss, but rather represents an interest refund". Banker's claim for the 1957 refund stated, in part: "In 1957 the taxpayer cashed in prior to their maturity date Series 'A' U.S. Savings Bonds

having a total face amount of $3,300,000.00 which according to their terms could only be sold back to Treasury with a fixed scale of redemption prices all below face value. The difference between the redemption price and the face amount was $227,436.00, which an individual taxpayer can treat as an ordinary loss deduction. As an insurance company this taxpayer treats such *losses* as an offset to investment income." (Emphasis supplied.)

demption of Series G Bonds, and provides in pertinent part:

"No adjustment for Federal income tax purposes should be made in any taxable year of such already realized interest (which is includible in gross income as and when above stated) on account of the refund by the taxpayer of a portion of such interest on the redemption of a bond before maturity. * * * Such obligation or requirement to refund a certain portion of the interest already realized does not become operative until if, as, and when a bond is redeemed before maturity. It is, however, a condition precedent to such redemption. Stated differently the making of such refund results in a loss then being incurred and sustained of a portion of the previously realized interest, all under provisions incorporated in the bond. Accordingly, it is held that the amount of interest thus refunded by a purchaser of such a bond is deductible for Federal income tax purposes as an ordinary loss, incurred in a transaction entered into for profit, in the taxable year of such redemption and refund. (Section 23(e) (2) and (f) of the Code.)"

We are mindful that I.T. 3504 and other cited rulings concern classes of taxpayers other than life insurance companies, however, the analysis of the transactions which were the subject of the rulings are, in our view, relevant in determining the tax consequences of the refunds here involved. There is nothing in the statutory scheme for taxation of life insurance companies during the period in question, to support the proposition that such companies were entitled as a matter of right to offset against, or exclude from their investment income losses which other taxpayers are permitted to deduct only as a matter of legislative grace. I.T. 3504 has been in effect since 1941 and Congress has had time and opportunity to affirmatively take action nullifying the force and effect of · the ruling. Its failure to do so is entitled to consideration. Compare United States v. Stowe-Woodward, Inc., 306 F.2d 678, 680 (1 Cir.1962) cert. denied 371 U.S. 949, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963), where the court stated: " * * * considerable leeway is allowed for administrative interpretation of a statute. (citing cases.) This principle applied to a G.C.M. ruling, and is not limited to regulations. (citing cases.) If, in light of its committee report, Congress was dissatisfied with this ruling, it had over twenty years to take action." Likewise, although Congress has reviewed the statutory provisions for the taxation of life insurance companies, it has not seen fit to place such companies on a comparable basis with other taxpayers and to permit such companies to treat interest refunds as deductible losses.

Appellants also contend that under the "claim of right doctrine" they should be permitted to offset the refunded interest against their investment income. We do not agree. The claim of right doctrine apparently had its origin in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932) where the Court, speaking through Mr. Justice Brandeis stated:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

It has been said that the doctrine is concerned more with "when" income is taxable rather than whether a receipt is taxable income, and if so, to whom it is taxable, 2 Mertens, Law of Federal Income Taxation, (Rev.) Sec. 12.103 (1961). See also Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953); Schlude v. C.I.R., 283 F.2d 234, 237, 238 (8 Cir.1960), vacated and remanded on other grounds, 367 U.S. 911,

81 S.Ct. 1915, 6 L.Ed.2d 1248 (1961),[4] Grandview Mines, 32 T.C. 759, 771 (1959), aff'd 282 F.2d 700 (9 Cir.1960).

The facts here are wholly incompatible with the doctrine. There was never any question of the absolute right of appellants to collect and receive the interest on the government bonds. The refund of a part of the interest received was not brought about because of adverse claims to the amounts refunded, but because appellants voluntarily exercised their option to redeem the bonds before maturity. As a condition precedent to such redemption appellants were required to refund a part of the interest previously received by them. Clearly the facts are inadequate to warrant application of the claim of right doctrine, and appellants were not entitled on the basis of such doctrine to offset the amount of interest refunded against their investment income.

 Finally, and as an alternative to their claimed right to offset the amount of interest refunded against interest received, appellants contend that they are entitled to deduct the refunds as "investment expenses". Again we find ourselves unable to agree.

As we have seen Sec. 803(c) (2) of the 1954 Code, as amended, provides that a life insurance company may deduct "investment expenses paid or accrued during the taxable year" from its gross investment income in arriving at its net investment income. But as we have endeavored to demonstrate, the amounts paid back to the Government were properly characterized and treated as losses for income tax purposes. This being so, there is no justification for artificially labeling such losses as investment expenses, Helvering v. Manhattan Life Ins. Co., 71 F.2d 292, 293 (2 Cir.1934); see also Midland National Life Ins. Co. v. Commissioner, 18 B.T.A. 1240, 1244 (1930); Jefferson Standard Life Ins. Co. v. Commissioner, 25 B.T.A. 1335, 1339 (1932), rev. on other grounds, 72 F.2d 363 (4 Cir. 1934);

Southland Life Ins. Co. v. Commissioner, 30 B.T.A. 874 (1934).

Even if we assumed arguendo that the refunding of the interest was an expense incidental to the purchase and redemption of the bonds, under the authority of Service Life Ins. Co. v. United States, supra, such expenses did not constitute "investment expenses" within the meaning of the statute.

In summary, we hold, (1) that appellants were not entitled to offset the interest refunded against their investment income in the years in which the bonds were redeemed and thereby gain an adjustment in their tax liability; (2) that the refunded interest constituted losses and there was no statutory authority for deduction by appellants of such losses; (3) that appellant may not offset such refunds against their investment income under the claim of right doctrine; (4) that the refunds did not constitute investment expenses within the meaning of the statute.

Affirmed.

---

4. On remand, the decision of the Tax Court was affirmed per curiam 296 F.2d 721 (8 Cir. 1961); affirmed in part and reversed in part 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1962).