**WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 71-1605.**

United States Court of Appeals, Sixth Circuit.

May 12, 1972.

Thomas L. Stapleton, Tax Div., Dept. of Justice, Washington, D. C., for appellant; Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Alan R. Vogeler, Cincinnati, Ohio, for appellee; Alan R. Vogeler, Cincinnati, Ohio, Arthur K. Mason, Washington, D. C., on brief; Kyte, Conlan, Wulsin & Vogeler, Cincinnati, Ohio, of counsel.

Before CELEBREZZE and KENT, Circuit Judges, and KINNEARY*, District Judge.

KENT, Circuit Judge.

This is an appeal from a decision of the Tax Court. 55 T.C. 1036. The appeal raises issues requiring the interpre-

* Honorable Joseph P. Kinneary, United States District Judge, Southern District of Ohio, sitting by designation.

tation and application of the Life Insurance Company Income Tax Act of 1959, Sections 801 *et seq.*, Internal Revenue Code, 1954. 26 U.S.C. § 801 *et seq.* The Commissioner of Internal Revenue appeals from the decision of the Tax Court, which held that the appellee, Western and Southern Life Insurance Company (Insurance Company), in computing its taxable income under the Act, could offset the net valuation premiums on deferred and uncollected premiums and due and uncollected premiums against the reserves required by the laws of the State of Ohio to be created on the anniversary date of every policy regardless of whether premiums had been collected or not.

The Tax Court held that the Insurance Company could accrue the net valuation premium (that allocated to reserve), but was not required to accrue the "loading" portion of deferred and uncollected premiums and due and uncollected premiums. The conclusion of the Tax Court resulted in a substantial reduction of the taxable income of the Insurance Company under the provisions of the Act.[1]

The basic facts are not in dispute. The taxpayer is a mutual life insurance company incorporated in Ohio. The premium paid by an insured is termed a *gross premium*, the sum of a *net* valuation premium to which is added a *loading* factor. The net valuation premium is that amount which, using the mortality table and interest rate assumed for the policy, will be sufficient to provide a reserve which will guarantee the Insurance Company's ability to pay the benefits provided by the policy. The loading factor is an amount, determined by an independent judgment of the insurance company, which is designed to cover es-

timated operating, administrative and sales expenses, and profits in the case of capital stock companies and dividends in case of mutual companies. The gross premium is that annual amount which provides coverage under the policy for one year from the anniversary of the date of issuance. At the end of any taxable year there will be outstanding policies upon which the premiums have not been paid although the anniversary date will have occurred. Deferred and unpaid premiums are portions of the annual premium by contract payable in installments with installments not yet due at the end of the taxable year. Due and uncollected premiums are premiums which were due on or before the end of the taxable year but were not yet paid, and the insurance remained in force because of the 31-day grace period for the payment of premiums required by statute to be provided in the policies.

Under the laws of the State of Ohio (and most other states), and pursuant to the requirements of the National Association of Insurance Commissioners (NAIC), an insurance company is obligated to establish and maintain reserves for its potential liability under all policies in force. The amount of the reserve, as required by Ohio law and the NAIC, is computed on the assumption that all gross premiums are paid on the anniversary date of the policy regardless of whether the premiums have in fact been paid. The reserves are reflected as a liability. The problem arises from the fact that the NAIC annual statement requires the taxpayer insurance company to show under assets only an amount equal to the net valuation portion of due and deferred uncollected premiums. The insurance company in turn reflects this amount in the computation of assets under Section 805 of the Act in order to

---

1. The Commissioner determined the following deficiencies in taxpayer's income taxes.

| Taxable year ended | Deficiency |
|---|---|
| December 31, 1958 | $ 78,486.51 |
| December 31, 1959 | 143,266.71 |
| December 31, 1960 | 219,300.21 |
| December 31, 1961 | 476,421.04 |
| December 31, 1962 | 659,724.36 |
| Total | $1,577,198.83 |

arrive at taxable investment income as provided in Section 804 of the Act. The net result of such procedure (reflection of assets at a net valuation premium value rather than a gross premium value) is to decrease the denominator of a fraction which has as a numerator the reserves and which renders the quotient to be taxed smaller.[2]

The Commissioner takes the position that life insurance companies, in making the computation to which reference has been made, should include as assets the gross premiums for all policies for which reserves are created. The Insurance Company, following the rules of the NAIC, included only the net valuation premiums. The Tax Court held contrary to the Commissioner's position as it has in other similar cases. Western National Life Insurance Company of Texas v. C.I.R., 50 T.C. 285 (1968), modified 51 T.C. 824 (1969), reversed 432 F.2d 298 (5th Cir. 1970). The other Courts of Appeals which have considered the problem have also rejected the Tax Court's approach. Jefferson Standard Life Insurance Company v. United States, 408 F.2d 842 (4th Cir. 1969), cert. den. 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); Franklin Life Insurance Company v. United States, 399 F.2d 757 (7th Cir. 1968), cert. den. 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969).

Simply stated, it is the Commissioner's position that if the taxpayer is to be permitted to utilize an accrual method of accounting for one purpose (determining reserve liability) then it should be required to use the accrual method consistently throughout all other income tax computations relating to the same policies and the same premium income (actual or anticipated). It is the Commissioner's position that only in this manner will the return properly reflect the insurance company's profitability.

It is the position of the Insurance Company that there is no obligation on the part of the policyholders to pay any premiums, that it cannot be required to accrue the loading factor of premiums which the policyholder has no legal obligation to pay and the Insurance Company has no legal right to collect.

The position taken by the Commissioner is supported by the relevant Code provisions, the regulations, and, as stated, the opinions of all other Circuits which have considered these issues.

With respect to the computation of taxes, Section 818(a) of the Act provides for an accrual method of accounting:

§ 818. *Accounting provisions*

*(a) Method of accounting.*—All computations entering into the determination of the taxes imposed by this part shall be made—

(1) under an accrual method of accounting, or

(2) to the extent permitted under regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).

Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.

Thus, if potential liability is to be accrued, we conclude that potential profitability must also be accrued. Considering Section 818(a) the Court of Appeals for the Fifth Circuit stated in Western National Life Insurance Company of Texas v. C.I.R., 432 F.2d 298, 301, 302 (1970):

"We also agree with the decisions in these two cases to the effect that the Congress did not adopt the N.A.I.C. form of statement for its accounting

---

2. For an excellent discussion of the computation stages and the taxable phases of this issue see Jefferson Standard Life Insurance Company v. United States, 408 F.2d 842, 844, 845 (4th Cir. 1969).

method as to determining the tax base for insurance companies. *As will appear from the statute itself, the N.A.I.C. annual statement was referred to as being the proper standard 'except as provided in the preceding sentence,' the preceding sentence providing that all computations should be under an accrual method of accounting.* In point of fact, the N.A.I.C. method is a hybrid method and not strictly an accrual method.

■ To paraphrase what is so well stated by the Court of Appeals for the Fourth Circuit: An accrual method of accounting would not require the inclusion of any part of these deferred and uncollected premiums. *However, when the taxpayer does accrue them, we are of the view that they must be accrued in full, even though advantage of only a part of them can be used by the taxpayer in the formula that is used for determining the base of taxation.* See 408 F.2d 842, 856." (Emphasis added).

The Commissioner's position is also supported by Federal Tax Regulation 1.805–5(a) (4) (ii) Example (1) which provides as follows:

"**Example (1).** Included in the statement of assets of P, a life insurance company, are the following items: Bonds; stocks; mortgages; home office and branch office buildings owned and wholly occupied by the company; furniture and equipment owned by the company and used in the home office and branch office buildings occupied by the company; agents' debit balances; premiums deferred and uncollected and premiums due and unpaid; bank deposits (including time deposits); and share accounts in savings and loan associations. For purposes of section 805(b) (4) and this subparagraph, the home office and branch office buildings owned and wholly occupied by the company, and the furniture and equipment owned by the company and used by it in connection with the operations conducted in the home office and branch office buildings occupied by the company, shall be excluded from the term 'assets' since such items are the only ones considered as being used by P in carrying on an insurance trade or business. *Accordingly,* since bonds, stocks, mortgages, agents' debit balances, *premiums deferred and uncollected and premiums due and unpaid,* bank deposits (including time deposits), and share accounts in savings and loan associations are not considered as being used by P in carrying on an insurance trade or business, they *are included within the term 'assets'* and, therefore, shall be taken into account by P in determining its current earnings rate." (Emphasis added).

It also appears that in computing gain under Section 809 of the Act the inclusion of loading is clearly required by the express words of the statute:

"(c) *Gross amount.*—For purposes of subsections (b) (1) and (2), the following items shall be taken into account:

(1) *Premiums.—The gross amount of premiums* and other consideration (including advance premiums, deposits, fees, assessments, and consideration in respect of assuming liabilities under contracts not issued by the taxpayer) on insurance and annuity contracts (including contracts supplementary thereto); less return premiums, and premiums and other consideration arising out of reinsurance ceded. Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums." (Emphasis added).

The Regulation adopted pursuant to that section of the statute provides:

Regulation 1.809–4(a) (1) (i):

"(1) *Premiums.* (i) *The gross amount of all premiums* and other consideration on insurance and annuity contracts (including contracts supplementary thereto) ; less return premiums and premiums and other consideration arising out of reinsurance ceded. The term 'gross amount of all premiums' means the premiums and other consideration provided in the insurance or annuity contract. Thus, the amount to be taken into account shall be the total of the premiums and other consideration provided in the insurance or annuity contract without any deduction for commissions, return premiums, reinsurance, dividends to policyholders, dividends left on deposit with the company, discounts on premiums paid in advance, interest applied in reduction of premiums (whether or not required to be credited in reduction of premiums under the terms of the contract), or any other item of similar nature. Such term *includes advance premiums, premiums deferred and uncollected and premiums due and unpaid,* deposits, fees, assessments, and consideration in respect of assuming liabilities under contracts not issued by the taxpayer (such as a payment or transfer of property in an assumption reinsurance transaction as defined in paragraph (a) (7) (ii) of § 1.809–5)." (Emphasis added).

Because the statutory provision and the regulation require the inclusion of loading in computing gain the Tax Court was in error in its conclusion.

In addition, as stated by the Court of Appeals for the Seventh Circuit in Franklin Life Insurance Company v. United States, 399 F.2d 757, 760 (1968):

"The careful and detailed attention given by Congress throughout Sections 801 through 820 to definition of the particular items utilized as factors in the tax formula and in specifying and enumerating the permissible deduc-tions and exclusions negates the existence of any intent on the part of Congress to relegate the substantive matter of offsetting or excluding loading on deferred and uncollected premiums, with its concomitant impact on the resulting tax, to the NAIC."

In concluding that loading was includable as an asset in computing investment income pursuant to Section 804, and that the insurance company was not entitled to a deduction for an increase in loading under the provisions of Section 809, the Court said in Franklin Life Insurance Company v. United States, 399 F.2d 757, 760, 761, in regard to the inclusion of loading as an asset:

"Taxpayer seeks to justify the District Court's exclusion of loading on deferred and uncollected premiums from assets in the computation of 'investment income' pursuant to Section 804. on the basis of taxpayer's obligations to policyholders, i. e., reserves. But taxpayer in computing its reserves for tax purposes did so on the assumption that on each policy anniversary the full annual premium has been received. . . .

The assumption that the annual premium has been received in full is, of course, a fiction, since annual premiums on all policies have not been received as of the end of the taxable year; rather, a portion thereof remains deferred and uncollected. The use of the fiction results in a bigger reserve liability figure and consequently bigger reserve liability deductions and exclusions than if reserves were computed on the basis of only those premiums actually received. If the fictional assumption were not indulged and only those reserves were accrued as were attributable to paid up portions of annual premiums, then the problem from an accrual standpoint would be simpler. But, Congress, apparently cognizant of the assumption upon which taxpayer and other life insurance companies compute reserves for annual statement purposes because of state statutory re-

quirements chose to recognize such assumption in the tax formula it prescribed and to base an accrual reporting requirement on that assumption. And, the application of accrual principles after that assumption has been made, will not permit of accrual of the entire annual reserve on one hand without incident accrual of the full annual premium. The District Court would permit the taxpayer to accrue a full year's liability without a corresponding accrual of the related year's asset in point of time. Such a result would attribute to Congress an intention that in the same statutory equations, exclusions and deductions attributable to reserves are to be based on the assumption that the annual premium is fully paid up and yet the amounts in the same equation from which these figures are to be subtracted are to be determined on the assumption that the annual premium is not fully paid up. This is, in effect, saying that Congress, when it specified accrual accounting, must have meant one rule to apply to reserve deductions and exclusions and another different accrual rule to apply to determining the amount from which the former are to be subtracted. We perceive nothing from which intent to impose such a dual standard of tax accounting can be presumed.

That the NAIC is willing to allow an admittedly overstated reserve while at the same time allowing an accounting entry with respect to assets which, while compensating *numerically* for the overstatement, does not fully account for the related asset, is of no aid to the taxpayer here. The acceptance of such an adjustment as being in accord with conservative and stringent solvency requirements does not permit of the utilization of such an approach to alter or modify the substantive provisions of a tax formula concerned with the *proportionate* relationship between assets and reserves. The gearing of the tax statute to an annual reserve requires recognition of no less than the annual premium."

And further said in regard to gain at page 760:

"Section 809(c) (1) specifically requires the inclusion of 'the gross amount of premiums' for the purpose of determining 'gain from operations' as defined in Section 809(b) (1). Taxpayer concedes that the intent and purpose of the Act require that the deferred and uncollected premiums be included in income on a gross basis (which includes loading). In our view that concession leaves no basis for further controversy. This is especially so in view of the fact that Congress has provided twelve specific deductions in Section 809 but makes no provision for an offset or deduction for 'increase in loading'. And, the burden is on the taxpayer to show the express statutory authority for a deduction claimed. Equitable Life Insurance Co. of Iowa v. United States, 8 Cir., 340 F.2d 9."

We agree with and again quote the statement of the Court in Western National Life Insurance Company of Texas v. C.I.R., 432 F.2d 298, 301, 302 (5th Cir. 1970):

"We also agree with the decisions in these two cases to the effect that the Congress did not adopt the N.A.I.C. form of statement for its accounting method as to determining the tax base for insurance companies. As will appear from the statute itself, the N.A. I.C. annual statement was referred to as being the proper standard 'except as provided in the preceding sentence,' the preceding sentence providing that all computations should be under an accrual method of accounting. In point of fact, the N.A.I.C. method is a hybrid method and not strictly an accrual method.

To paraphrase what is so well stated by the Court of Appeals for the Fourth Circuit: An accrual method of accounting would not require the inclusion of any part of these deferred

and uncollected premiums. However, when the taxpayer does accrue them, we are of the view that they must be accrued in full, even though advantage of only a part of them can be used by the taxpayer in the formula that is used for determining the base of taxation. See 408 F.2d 842, 856."

For the reasons herein stated the judgment of the Tax Court is reversed and the case is remanded to that Court for further proceedings not inconsistent with this decision.