WESTERN NATIONAL LIFE INSURANCE COMPANY OF TEXAS, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1621–64. Filed February 24, 1969.

*J. W. Bullion,* for the petitioner.
*John W. Holt* and *Patrick W. Johnson,* for the respondent.

### SUPPLEMENTAL OPINION

DRENNEN, *Judge:* Respondent filed a timely motion for reconsideration and revision of the original opinion filed by this Court in this proceeding on May 13, 1968, reported in 50 T.C. at 285.[1] The motion was that the Court "modify said opinion by deciding the gross deferred and uncollected and gross due and unpaid premium asset issues (issues Nos. 2, 3, and 4 in the Opinion) in accord with the contention of the respondent." Respondent's motion was set down for oral argument on August 7, 1968, and the Court invited counsel [2] for the American Life Convention and the Life Insurance Association of America to participate as amici curiae. In addition to the oral argument, extensive briefs were filed by the amici curiae as well as by petitioner and respondent. In the light of the arguments presented, and the decision of the U.S. Court of Appeals for the Seventh Circuit in *Franklin Life Insurance Co.* v. *United States,* 399 F. 2d 757, certiorari applied for Nov. 27, 1968, promulgated subsequent to the original opinion of this Court, we deemed it appropriate to reconsider the two issues mentioned above and to revise our opinion as a result thereof. Consequently, respondent's motion for reconsideration and revision was granted.

This Court made complete findings of fact and reviewed the provisions of the Code which are pertinent to the issues here under review in its original opinion and will not repeat them here. Reference is made to the former opinion of this Court, *supra,* for the facts involved in this proceeding.

The only issues before the Court involved adjustments proposed by respondent in the computation of petitioner's so-called phase I tax, or tax on investment income, imposed under the Life Insurance Com-

---

[1] Respondent also filed a request for review by full Court, which is denied.

[2] *William B. Harman, Jr.,* for American Life Convention. *Kenneth L. Kimble,* for Life Insurance Association of America.

pany Income Tax Act of 1959, sec. 801 *et seq.*, of the 1954 Code as amended. In its original opinion the Court agreed with petitioner and held that "deferred and uncollected premiums" and "due and unpaid premiums" were not to be included as "assets" within the meaning of section 805(b)(4) of the Code,[3] in computing petitioner's share (and the policyholders' share) of its investment income under the formula provided for that purpose in section 804. The basic premise upon which the Court based this conclusion was that there should be included in assets for purposes of the computation only such assets as produced the net investment income, and that these bookkeeping assets, not being available to petitioner, should be excluded.

Respondent contends that the entire gross amount of the "deferred and uncollected premiums" and the "due and unpaid premiums," including "loading," should be included in assets for purposes of the computation. The amici agree with respondent that "deferred and uncollected premiums" should be included in assets to avoid distortion in the computation under the prescribed formula, but that the loading should not be included. The amici took no position with respect to "due and unpaid premiums."

Upon further reflection, we agree with the amici that the net "deferred and uncollected premiums" should be included in assets but that the "loading" included in such premiums should not be included; also we conclude that the net "due and unpaid premiums" should be included in assets but that the loading included in such premiums should not be included. Accordingly, the original opinion of this Court, *supra*, is modified to reflect the views herein expressed with respect to those two issues, and the conclusions reached therein with respect to all other issues involved are hereby affirmed.

The legislative history of the Life Insurance Company Income Tax Act of 1959 indicates that Congress was attempting to tax all of a life insurance company's share of its gross income, both investment income and underwriting income, in a manner as consistent as possible with the accounting procedures required to be used by the company by State regulatory agencies. This involves accepting the assumption, even though it has no basis in fact, that in establishing its reserves for policyholder liabilities in the taxable year the insurance company must assume that the gross annual premiums on all policies in force at the end of the year have been paid in full. Thus the net valuation premiums, i.e., the gross premiums less the loading factor, on all policies in force at the end of the year are added to the company's reserves and

---

[3] These terms are defined in the original opinion. Briefly, "deferred and uncollected premiums" are premiums that will become due by the end of the contract year on life insurance contracts but which are not collected by the end of petitioner's tax (calendar) year, and "due and unpaid premiums" are premiums on accident and health insurance contracts that are due but have not been paid at the end of petitioner's tax year.

are shown on its balance sheet as liabilities. In order to avoid a distorted balance sheet resulting from setting up this admittedly overstated reserve as a liability, the insurance company is permitted to include in its balance sheet as an offsetting asset the items "deferred and uncollected premiums" and "due and unpaid premiums," which are likewise fictitious assets. As with the liability, the amount to be included on the asset side of the balance sheet on the National Association of Insurance Commissioners (NAIC) forms is the net valuation portion of the premiums, exclusive of loading.

In the scheme of taxing the insurance company's share of its investment income under phase I of the tax, the reserves above mentioned are used to measure the policyholders' share of its investment income. The policyholders' reserves are multiplied by the company's own current or average investment rate to obtain the policyholders' share of the investment yield, which is nontaxable; the balance of the investment yield is the company's share of net investment income which is subject to tax under phase I.

In arriving at the company's current investment rate, certain expenses are deducted from its gross investment income to obtain the investment yield. The investment yield is then divided by the assets of the company to obtain the current rate. The company assets used in this computation are defined in section 805 (b) (4) as all the assets of the company other than real and personal property (excluding money) used by it in carrying on an insurance trade or business. Inasmuch as the fictitious assets "deferred and uncollected premiums" and "due and unpaid premiums" are not assets used by the company in carrying on its insurance business, it would seem that these "assets" must be included in the computation used in finding the company's current rate, even though they are not real assets and could not possibly be used to produce investment income.

While it is difficult to understand how amounts which neither have been received nor are due and collectible as of the end of an accounting year can be considered accruable in the usual accounting sense of that term, it is easier to understand that if one starts with the *assumption* that these amounts have all been paid by the end of the year, they would certainly be accrued if the assumption is accepted as fact. It is also easier to understand that if the objective of the phase I tax is to exclude from the tax on investment income the policyholders' share of that income, and in order to arrive at the amount of that exclusion the measurement used is an amount (the reserves) which includes in it net valuation premiums which are assumed to have been paid in full, it would thereby become necessary, in order to avoid distortion in this scheme of taxation, to likewise assume that all net valuation premiums have been collected and are "accrued" assets in the company's hands for

purposes of determining the current rate and the company's share of the investment income or yield that is subject to tax. In other words, it is easier to leave for the moment the practicalities of taxation to include in both sides of a formula used for apportioning investment income between the company and its policyholders equal and offsetting fictitious amounts than to accept the theory that uncollected premiums that are not even due can be considered "assets" which produce investment income. To do otherwise would appear to throw the formula out of balance and distort the proration.

While we find no specific support for this conclusion in the legislative history of the Act, this fiction appears to be accepted by all parties here concerned as a part of the scheme for taxing insurance companies under the 1959 Act, and the Court of Appeals for the Seventh Circuit accepted it in its opinion in *Franklin Life Insurance Co.* v. *United States, supra.* Inasmuch as the insurance industry operates a good bit on assumptions, perhaps this is the only reasonable approach to the problem. In any event we are now convinced that net "deferred and uncollected premiums" and "due and unpaid premiums" must be included in assets in computing petitioner's tax under phase I of the Act, and our former opinion holding to the contrary is modified in this respect.

This does not answer the issue entirely, however. There still remains the question whether the loading factor included in "deferred and uncollected premiums" and "due and unpaid preminums" must be included in these fictitious assets. Respondent argues that "loading" should be included, and he is supported in this position by the Court of Appeals in the *Franklin* case, and by the District Court in *Jefferson Standard Life Insurance Co.* v. *United States*, 272 F. Supp. 97 (M.D. N.C. 1967), which is now on appeal to the Court of Appeals for the Fourth Circuit. Petitioner and the amici curiae argue that the loading factor should not be included in assets because it has a zero basis and to include the entire gross amount of the premiums in assets while only the net valuation part thereof (gross premiums minus loading) is included in reserves would weight the formula against the insurance company and distort the balance sheet and the computation the other way. With all due respect to the Court of Appeals for the Seventh Circuit and the District Court in North Carolina, we must agree with petitioner and the amici.

The reasoning of the Court of Appeals and the argument of respondent is that in computing phase II of the tax on petitioner's underwriting or operating income under section 809, petitioner is required to take into account as "gain from operation" the gross amount of premiums and other consideration (including advance premiums, deposits, fees, assessments, and consideration in respect of assuming liabilities

under contracts not issued by the taxpayer) on insurance and annuity contracts, less return premiums, and the premiums and other consideration arising out of reinsurance ceded.[4] Again using the assumption that all premiums on policies in force at the end of the year have been paid in full by the end of the year, the "deferred and uncollected premiums" and "due and unpaid premiums," including the loading factor therein, are considered to be accrued income for the purpose of this computation. (This, despite the fact that the statute expressly includes "advance premiums, deposits, fees," etc., but says nothing about deferred and unpaid premiums.) The argument then points out that the statute does not allow any deduction for loading; hence the entire amount of the gross premiums becomes an "accrued" asset.

We do not believe it necessarily follows that because loading is required to be included in gross premiums and is not deductible in the computation of the phase II tax, it must also be included in assets for computation of the phase I tax. As we understand it the phase II computation is designed to tax the insurance companies' gain on operating income including gain on the very charges we are discussing, i.e., the loading charges. There is no question that any gain on such charges is intended to be taxed to the insurance company, either in the year of "accrual" or when actually realized. On the other hand the only reason for including deferred and unpaid premiums as balance sheet assets for purposes of the phase I tax is to offset the overstated reserves and prevent distortion in computing the policyholders' and the insurance companies' shares of investment yield. We see no reason when indulging in this fiction to set up, or accrue, an asset greater in amount than is necessary to offset the overstated liability on the other side of the balance sheet. To do so would simply swing the pendulum the other way and distort the allocation against the petitioner.

We find nothing in section 818(a) that requires a different conclusion. That section provides that all computations entering into the determination of the taxes imposed by this law shall be made (1) under an accrual method of accounting, or (2) to the extent permitted under the regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter, except the cash method. Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement by the National Association of Insurance Commissioners.

As pointed out in our prior opinion, the deferred and unpaid premiums would not be accrued under standard accrual accounting con-

---

[4] This was conceded by the taxpayer in *Franklin Life Insurance Co.* v. *United States*, 399 F. 2d 757.

cepts, because they were not received by the end of the year and were not collectible unless the insured agreed to pay them. They could be considered accrued, and thus give rise to an accrued asset, only if the assumption is made that all premiums on policies in force had been paid by the end of the year. If this assumption is indulged in for this purpose, we think it should also be assumed that all commissions and other expenses covered by the loading charge had been paid by the end of the year, leaving only the net valuation amount as the value of the asset. We recognize that if the loading charge exceeds the expenses chargeable against it, there might be some of the loading charge left available as a fictitious asset. However, that gain would eventually be taxed under phase II of the tax and we see no reason to include it as an asset for purposes of the phase I computation until the amount thereof can be determined. Furthermore, if the loading factor must be considered an accrued asset under the assumptions indulged in, we doubt that it would be an asset other than property used by it in carrying on an insurance trade or business under the definition contained in section 805 (b) (4).

We find nothing in the definition of assets in section 805 (b) (4) that specifically includes loading. The NAIC accounting excludes it from assets. And we would not know what adjusted basis, if any, to attribute to this item in any event if it were included in assets.

Consequently, we conclude that "loading" on "deferred and uncollected premiums" and on "due and unpaid premiums" is not includable in assets under section 805 (b) (4) of the Code.

Respondent urges that under section 1.801–4(f) of his regulations [5] if petitioner is permitted to exclude any part of gross premiums deferred and uncollected and due and unpaid from assets, then a corresponding portion of the net valuation premium must be excluded from the reserves used in the tax computation. The only portion of the accrued gross premiums excluded from assets is the loading factor, which never becomes a part of the reserves used for purposes of this computation. We do not believe any further adjustment either should be made or is called for by the regulations.

In his memorandum filed in support of this motion, respondent argues that if loading is omitted from assets (deducted from "accrued" gross premiums) for purposes of the computation of the phase I tax petitioner would in effect get a double deduction for the expenses supposedly covered by the loading factor when the phase II tax is computed. We do not agree with respondent's reasoning in this argument,

[5] Sec. 1.801–4(f) *Adjustments to life insurance reserves.* In the event it is determined on the basis of the facts of a particular case that premiums deferred and uncollected and premiums due and unpaid are not properly accruable for the taxable year under section 809 and, accordingly, are not properly includible under assets (as defined in sec. 805 (b) (4)) for the taxable year, appropriate reduction shall be made in the life insurance reserves. * * *

but we are happy to say that we have no issue before us concerning the phase II tax and we choose not to venture further than need be into this fantasy world of life insurance company accounting and taxation.

Except as modified herein, the conclusions reached in our prior opinion stand affirmed.