**WESTERN NATIONAL LIFE INSURANCE COMPANY OF TEXAS,** Petitioner-Appellee,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

No. 28569.

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1970.

Thomas L. Stapleton, Atty., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div., U. S. Dept. of Justice, K. Martin Worthy, Chief Counsel, Eugene F. Colella, Atty., Internal Revenue Service, Washington, D. C., for appellant.

Francis A. Goodhue, Jr., New York City, Arthur K. Mason, Washington, D. C., J. Waddy Bullion, Buford P. Berry, Dallas, Tex., for taxpayer; William J. Glading, Newark, N. J., Alan R. Vogeler, Cincinnati, Ohio, Joseph Korff, New York City, of counsel.

O. Jan Tyler and Robert K. Sands, James L. Walsh, Gen. Counsel, Dallas, Tex., William B. Harman, Jr., Kenneth L. Kimble, William T. Gibb, Washington, D. C., G. Mason Connell, Jr., Richmond, Va., amici curiae.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

In this appeal from the Tax Court of the United States the Commissioner of Internal Revenue challenges the correctness of the Tax Court's determination of the method to be used in the computation of life insurance company taxable income under the Life Insurance Company Income Tax Act of 1959, Sections 801–820 of the Internal Revenue Code of 1954, as amended. The Tax Court held that the company could accrue "deferred and uncollected" annual premiums for the purpose of complying with state statute requirements that an amount equal to the policyholder's share of the policy of such premiums must be added to reserves on the assumption that they had been paid, without being required to accrue such "deferred and uncollected" annual premiums for inclusion in the company's assets except in an amount that would balance off the amount added to reserves.

The commissioner's position, which was successfully urged before the courts of appeals of the Seventh and Fourth Circuits in Franklin Life Insurance Co. v. United States, 7th Cir., 399 F.2d 757 and Jefferson Standard Life Ins. Co. v. United States, 4th Cir., 408 F.2d 842 is that "once accrued for any purpose, accrued for all purposes."

The facts are not in issue. It is clear that a gross annual premium on an insurance contract is the agreed consideration for coverage for a period of a year from the policy anniversary date. It is also universally understood that of that amount a certain part must be set aside as a reserve for the protection of the policyholder. For the purpose of this litigation all parties seem satisfied with the definition of this amount as the "net valuation premium." Also, the parties all agree that the remainder of the premium, that is, the difference between gross and net valuation premiums may be referred to as the "loading." Uniform with all insurance companies is a condition that exists at the end of each

taxable year that there are policies outstanding as to which a partial premium has been paid but remaining premiums are to be paid at quarterly or monthly intervals throughout the balance of the policy year. There is also at all times at the end of the taxable year a certain amount in premiums that are due which are not paid because of the grace period provided in the policies. These two classes of premiums are known as "deferred and uncollected premiums." The parties agree that under normal accounting procedures these deferred and uncollected premiums are not truly accruable as income in the usual accounting sense, since the companies have no legal claim to have them paid. Undoubtedly, many are never paid, but equally true is the fact that many are ultimately collected.

Because the policy is outstanding from the date of its issue, the life insurance industry either because of requirements of state regulating agencies or otherwise, universally considers these deferred and uncollected premiums as accrued at the end of the year for the purpose of dividing them into what might be called the "policyholder's share" and the "loading," and then covering the policyholder's share into reserves. It is also generally true, apparently, (as occurred in this case) that in reporting gross income for the purpose of determining "gain and loss from operations" under Section 809(c) (1) insurance companies do actually report under the item of "gross amount of premiums and other considerations * * * on insurance and annuity contracts" the total amount of deferred and uncollected premiums.

For many years the National Association of Insurance Commissioners, (hereinafter N.A.I.C.), has furnished annual statement forms to be used for reporting to the state insurance commissioners, and these annual statements are filed as exhibits to the income tax returns of the insurance companies. It is not disputed that under the N.A.I.C. forms only that part of the deferred and unpaid premiums representing the policyholder's share is shown as an asset. In other words, there is a corresponding entry in the asset column to offset the liability to reserves resulting from the state commissioners' requirement that the policyholder's share be accrued and added to reserves even though not legally collectable.

The Act with which we are concerned establishes a statutory framework which provides a measurement of life insurance company total income on an annual basis for use and application of the normal corporation tax to the result. It utilizes a series of separate computations in the determination of the final tax.[1]

It is not necessary, for an understanding of the issues here, for us to detail the computations that are to be made to ascertain the net result to which the rate of tax is applied. Suffice it to say, that the larger the reserve, which the numerator of a fraction is, the less the quotient which is to be taxed. So, too, the smaller the "assets," being the denominator of the fraction, the smaller the quotient which is to be taxed. Thus, the effect, possibly fortuitous, of the method used by this taxpayer as well as those in the cases cited above and by all other companies following the N.A.I.C. form of reporting, is that the inclusion of a part of the gross deferred and uncollected premiums representing the policyholders' share in the reserves as an accrued item and the omission of all or a part of such premiums in the asset column works to the tax advantage of the taxpayer.

This company claimed initially that although it was required to, and did, accrue a large percentage of the gross premiums on deferred and uncollected premiums in the reserve account, it was not required to add *any part* of this amount to assets. The commissioner issued a deficiency letter, and the insurance company litigated the matter before the Tax Court. That Court, in an initial opinion, decided that Western National Life Insurance Company correctly excluded any part of the deferred and uncollected premiums from the asset side

---

1. For a short description of the Acts, see United States v. Atlas Life Ins. Co., 381 U.S. 233, 85 S.Ct. 1379, 14 L.Ed.2d 358.

of the ledger. Upon petition for rehearing and upon the filing of a brief by the American Life Convention and the Life Insurance Association of America as amicus curiae, the court adopted the views of amici and held that the asset figure should include an offsetting entry of an amount equivalent to the figure set aside by the company to reserves, representing the policyholders' share of the deferred and uncollected premiums. The Tax Court noted the contrary decision of the Court of Appeals for the Seventh Circuit in Franklin, *supra*, and the District Court in North Carolina in Jefferson Standard Life Insurance Co. v. United States, 272 F.Supp. 97 (M.D.N.C. 1967) (subsequently affirmed supra). However, the Tax Court was not persuaded, and held with the position put forward by the American Life Convention and Life Insurance Association of America.

While, of course, we are not bound by the decisions of the Courts of Appeals of the two circuits which have heretofore passed upon precisely this same question, we think it appropriate to say that it would take extremely cogent reasoning to cause us to take a different view on a matter of statutory construction.

■ We believe that much weight should be placed on the reasoning of the court in the Franklin case which, as we view it, says, in effect, that the statute requires that *all* computations entering into the determination of the taxes imposed shall be made under an accrual method of accounting, as it does; [2] that this company does accrue deferred and uncollected premiums, although ordinary bookkeeping or accounting practices would not require this treatment, because of the fact that they are not legally collectable; these premiums are accrued in order for the company to comply with the state regulation that it transfer to the reserves that percentage of the amount representing the policyholders' share, and the total amount is also accrued by the company in reporting its gain from operations, which is a part of the formula by which the ultimate amount of income to be taxed is arrived at; thus, the accrual method adopted by the insurance company must be applied uniformly, even though in its computations under phase one of the statute it obtains the benefit in the numerator of the fraction of only a percentage (albeit a large one) of the total. There would be no percentage to be transferred to reserves if the entire deferred and uncollected premiums were not accrued. We agree with the other two courts that once the accrual method is used it must be applied uniformly, even though the result would be that the asset figure resulting from applying the accrual basis to the gross premiums would not balance with the policyholders' share of the "net valuation premiums."

■ We also agree with the decisions in these two cases to the effect that the Congress did not adopt the N.A.I.C. form of statement for its accounting method as to determining the tax base for insurance companies. As will appear from the statute itself, the N.A.I.C. annual statement was referred to as being the proper standard "except as provided in the preceding sentence," the preceding sentence providing that all computations should be under an accrual method of accounting. In point of fact, the N.A.I.C. method is a hybrid method and not strictly an accrual method.

■ To paraphrase what is so well stated by the Court of Appeals for the

2.  Section 818(a), Internal Revenue Code of 1954:

    All *computations* entering into the determination of the taxes imposed by this part shall be made—
    (1) under an *accrual* method of accounting, or
    (2) to the extent permitted under regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).
    *Except as provided* in the preceding sentence, all such *computations* shall be made in a manner consistent with the manner required for purposes of the annual statement provided by the National Association of Insurance Commissioners. (Emphasis supplied.)

Fourth Circuit: An accrual method of accounting would not require the inclusion of any part of these deferred and uncollected premiums. However, when the taxpayer does accrue them, we are of the view that they must be accrued in full, even though advantage of only a part of them can be used by the taxpayer in the formula that is used for determining the base of taxation. See 408 F.2d 842, 856.

From the briefs filed with this court and from our general knowledge, it is evident that very few phases of corporate or personal income taxation has been attended with as much difficulty as the devising of a fair basis for taxing insurance companies. It is not doubted that the industry and treasury officials as well as the joint committee on taxation of the House and Senate and the two additional appropriate committees of the two congressional bodies have worked closely together in attempting to achieve a final result that is fair and workable. This result is disclosed in the amendments of 1959. We, therefore, do not believe much is to be gained by reading the legislative history prior to that time. As stated by the court in Jefferson Standard Life Ins. Co., supra, "the life insurance income tax act of 1959 was a comprehensive revision of the scheme of imposing income taxes on life insurance companies, other than mutual life insurance companies." 408 F.2d 842 at 844.

We fully appreciate the argument made by the insurance company here, as well as by the amici to the effect that the failure to specify "loading" as a deductible item in the computation of "gain from operations" is of no significance, because, so it is argued, the initial requirement of reporting gross premiums was not thought to include deferred and uncollected premiums in the item of gross premiums. It is clear that if this theory were correct, then there need be no specific provisions for deducting the loading increment among the list of allowable deductions. However, we approach this particular problem from the standpoint of a history which includes the income tax returns filed in this particular case, which shows that insurance companies *have* included the gross amounts of deferred and uncollected premiums as "gross premiums" on its tax returns. Thus, even though this inclusion may have resulted in an adverse result to the taxpayer, under this part of the tax formulas, the company treated the gross amounts of the deferred and uncollected premiums as accrued, even though they now contend that this was not required by Section 809(c) (1) of the Internal Revenue Code.[3]

It must be clear, therefore, that the Court of Appeals in the Franklin case made a logical connection between this fact and the determination of whether the *gross amount* was to be included in assets rather than merely the amount of premiums on deferred and uncollected items *less loading*. We fully concur with the following statement in the Jefferson Standard case, as a further comment on the contention strongly made by the briefs before us, that Congress, in effect, turned over to the N.A.I.C. the power to adopt a method of computation of the tax base even though it might not fully fit into the accrual method of accounting. "The careful and detailed attention given by Congress throughout Sections 801 through 820 to definition of the particular items utilized as factors in the tax formula and in specifying and enumerating the permissible deductions and exclusions negates the existence of any intent on the part of Congress to relegate the substantive matter of offsetting or excluding loading on deferred and uncollected premiums, with its impact on the resulting tax, to the N.A.I.C."

The Tax Court should have required the inclusion in the assets columns of the taxpayer of the gross amount of deferred and uncollected premiums, rather than limiting such increment of assets to an amount equal to the policyholders' share therein.

The Tax Court decision is reversed and the case is remanded to that court

3. Section 809(c) provides for inclusion in the computation of gain or loss from operations of the *"gross amount"* of premiums and other consideration * * * on insurance and annuity contracts. (Emphasis added.)

for further proceedings not inconsistent with this opinion.