DELTA METALFORMING CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Delta Metalforming Co. v. Commissioner
Docket No. 6606-77.
United States Tax Court
T.C. Memo 1978-354; 1978 Tax Ct. Memo LEXIS 163; 37 T.C.M. (CCH) 1485; T.C.M. (RIA) 78354; September 7, 1978, Filed *163 Held: For a person's stock ownership to be taken into account in determining whether the 80 percent ownership test of sec. 1563(a)(2)(A) has been satisfied, the person must own stock in each member of the alleged controlled group of corporations. Fairfax Auto Parts of No. Va., Inc. v. Commissioner,65 T.C. 798 (1976), revd. 548 F.2d 501 (4th Cir. 1977), and Charles Baloian Co. v. Commissioner,68 T.C. 620 (1977), on appeal (9th Cir. Apr. 19, 1978), followed. Neil J. O'Brien, for the petitioner. John F. Dean, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for 1975 in the amount of $ 13,500. Petitioner filed a timely petition in this Court and respondent filed his answer. Respondent then filed a Motion for Judgment on the Pleadings and petitioner also filed a Motion for Judgment on the Pleadings. When the case was called for argument on the two motions the parties filed a stipulation of all the relevant facts. After hearing oral arguments the Court took the motions under advisement and the parties were offered the opportunity to file briefs, which they have done. The only issue for decision is whether *164 petitioner is a member of a controlled group of corporations as defined by section 1563(a)(2), I.R.C. 1954, [1] thus permitting respondent to deny petitioner a surtax exemption under section 1561(a). This in turn depends, in this case, on whether a person's stock ownership can be taken into account for purposes of the 80-percent test under section 1563(a)(2)(A) when that person does not own stock in each corporation in the alleged brother-sister controlled group. The relevant facts are as follows. Petitioner, Delta Metalforming Co., Inc., is a corporation doing business in Dallas, Tex., and now having its principal place of business at 10848 Lunar Road, Dallas, Tex. Petitioner filed a Form 1120 Corporate Income Tax return for the calendar year 1975 with the director, Internal Revenue Service Center, Austin, Tex.
A statutory notice of deficiency was sent to petitioner on April 27, 1977. The only adjustment determined by respondent was the disallowance of the $ 25,000 surtax exemption claimed by petitioner, for the reason that petitioner was a member of a controlled *165 group of corporations and the surtax exemption had been allowed to another member of the controlled group. The outstanding voting stock of petitioner is owned by three individuals, W. T. Slayton, L. L. Edens, and J. G. Ellis, who own 36.4 percent, 27.2 percent and 36.4 percent of the stock, respectively. The above three individuals, together with F. T. Sharp, collectively own 100 percent of the voting stock of two other corporations, Delta Steel Buildings, and Delta Engcon. Percentage ownership of the stock of petitioner, Delta Steel, and Delta Engcon is represented by the following chart: Delta
Delta
Identical Stockholder
Petitioner
Steel
Engcon
ownership
Percent
Percent
Percent
Percent
W. T. Slayton
36.4
26.7
26.4
26.4
L. L. Eddins
27.2
19.9
20.8
19.9
J. G. Ellis
36.4
26.7
26.4
26.4
F. T. Sharp
0
26.7
26.4
0
Total
100
100
100
72.7
On its 1975 corporation income tax return petitioner took the full surtax exemption as allowed by section 11(d) of the Code. The full surtax exemption was also taken by Delta Steel on its 1975 corporate income tax return. The parties agree that the stock ownership of petitioner, Delta Steel, and Delta Engcon, as represented in the table above, meets the "50 percent test" of section 1563(a)(2)(B). *166 Section 11(a) imposes a tax on the taxable income of corporations consisting of a normal tax computed under subsection (b) and a surtax computed under subsection(c). Subsection (c) imposes a surtax of 26 percent of the amount by which the taxable income exceeds the surtax exemption for the taxable year. Under subsection (d) the surtax exemption was $ 25,000 except as otherwise provided in section 1561. Section 1561(a)(1) provides that the component members of a controlled group of corporations shall be limited to one surtax exemption under section 11(d), to be divided equally among the component members of the group unless all such component members consent to an apportionment plan providing for an unequal allocation of such amount. [2]
Section 1563(a)(2) defines a brother-sister group of controlled corporations as: Two or more corporations if 5 or fewer *167 persons who are individuals, estates, or trusts own * * * stock possessing-- (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation; and (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation. Petitioner contends that a person's stock ownership can be taken into account for purposes of the 80 percent test under section 1563(a)(2)(A) only when that person owns stock in each member of the alleged brother-sister controlled group, relying on the decisions of this Court in Fairfax Auto Parts of No. Va., Inc. v. Commissioner,65 T.C. 798 (1976), revd. 548 F.2d 501 (4th Cir. 1977), and Charles Baloian Co. v. Commissioner,68 T.C. 620 (1977), on appeal (9th Cir. Apr. 19, 1978). And since F. T. Sharp owned no stock of petitioner his stock ownership in Delta *168 Steel and Delta Engcon cannot be taken into consideration for purposes of the 80 percent test and that test is not met; thus petitioner is not a member of a controlled group of corporations and section 1561(a)(1) does not apply. Respondent contends that for purposes of the 80 percent test a person's stock ownership in any one or all of the members of the alleged controlled group of corporations may be taken into consideration if he is one of the five or fewer group of persons who collectively own at least 80 percent of the stock of all of the corporations in the group even though he may not own any stock in one or more of the corporations. Respondent relies on the dissenting opinion of Judge Simpson of this Court in Fairfax Auto Parts, the decision of the Fourth Circuit in Fairfax Auto Parts of No. Va., Inc. v. Commissioner,supra, the decision of the Eighth Circuit in T. L. Hunt, Inc. v. Commissioner,562 F.2d 532 (8th Cir. 1977), reversing a Memorandum Opinion of this Court, and sec. 1.1563-1(a), Income Tax Regs., and Example 1 contained therein. [3] If respondent's interpretation of section 1563(a)(2) is correct petitioner was a member of a brother-sister controlled group of corporations *169 and his disallowance of the surtax exemption must be upheld. This difficult but clear-cut legal issue has been considered by this Court on several occasions before. We first considered it in Fairfax Auto Parts of No. va., Inc. v. Commissioner,supra, in a Court-reviewed opinion released in January of 1976. The majority opinion held that in order for a person's stock ownership to be counted for purposes *170 of the 80 percent test under section 1563(a)(2)(A) such person must own stock in each of the corporations included in the alleged controlled group. In doing so the majority in effect found respondent's regulation to the contrary to be invalid. Judge Simpson filed an extensive dissenting opinion, which was joined by three other judges, in which he concluded that the statutory language of section 1563(a)(2) and the legislative history thereof supported respondent's interpretation of the law, that in subsequent legislation (ERISA of 1974) Congress indicated its approval of respondent's interpretation and application of section 1563, and that under the circumstances respondent's regulations were neither unreasonable nor clearly inconsistent with the statute and consequently there was no basis in the law for this Court to refuse to apply the regulations. The decision of this Court in Fairfax Auto Parts of No. Va., Inc. v. Commissioner,supra, was reversed on appeal by the Court of Appeals for the Fourth Circuit in January of 1977. In the per curiam opinion of that court, 548 F.2d 501, the issue was not discussed in detail; the court said that the majority and dissenting opinions of the *171 Tax Court set out the arguments supporting both interpretations of the statute and there was no need to repeat them. It concluded that the dissent's interpretation of the statute accords with the text of the statute and its legislative history and reversed for the reasons set forth in the dissenting opinion of the Tax Court. Prior to the reversal of Fairfax Auto Parts this issue again came before this Court in T. L. Hunt v. Commissioner,T.C.Memo. 1976-221. In that case respondent admitted that if the Tax Court continued to follow the Fairfax case he would lose but urged the Court to reconsider its conclusion in Fairfax. In a brief Memorandum Opinion this Court said: Although Fairfax was promulgated only a few months ago, we have carefully reviewed it. We remain impressed by its cogent reasoning. Consequently the Tax Court affirmed its position in Fairfax and held for the taxpayer. The Hunt case was appealed to the Court of Appeals for the Eighth Circuit which also reversed the Tax Court in a divided opinion issued in September of 1977, 562 F.2d 532. The majority opinion agreed with the Fourth Circuit that the dissenting opinion in the Tax Court correctly interpreted and applied *172 the law and that there was no statutory requirement in applying the 80 percent test that each of the five or fewer persons who owned 80 percent of the stock of the corporations in the group own stock in each of the corporations. Consequently, the holding of the Tax Court constituted an unwarranted addition to the statute of a requirement not reflected in the plain language of the statute. While the majority opinion discussed the language of the statute, its legislative history, and the regulations, it reiterated the arguments in the dissenting opinion of the Tax Court in Fairfax and relied thereon in upholding the validity of the regulations. Judge Webster filed a strong dissenting opinion in which he pointed out that it was not consistent with the purpose of Congress to permit use of different groups to meet the two tests, and that to give the statute any meaning the same group that has 50 percent control of the corporations must also have at least an 80 percent financial interest in the corporations. He concluded that the regulation was an unwarranted extension of the statute and therefore invalid. Prior to the reversal of the Hunt case by the Eighth Circuit, the issue again came *173 before this Court in Charles Baloian Co. v. Commissioner,supra. Since the Tax Court had been reversed in Fairfax, the opinion in Baloian was Court reviewed. The majority opinion, written by Judge Forrester, a recalled judge who heard the case, again rejected respondent's interpretation of the statute and held for the petitioner. The opinion said: * * * We fully recognize that section 1.1563-1 (a)(3), Income Tax Regs., dictates a holding in favor of respondent; however, in a reviewed opinion, Fairfax Auto Parts of No. Va., Inc. v. Commissioner, supra, we held this regulation to be "plainly inconsistent with the thrust of the statutory language" (65 T.C. at 803) and, therefore, to be invalid. * * * Respondent's substantive arguments on this issue are in large part drawn from the views expressed by the dissenting opinion filed in Fairfax Auto Parts of No. Va., Inc. v. Commissioner,supra. We *174 had the benefit of those views and arguments during our initial consideration of that case, and we do not find them to be any more persuasive today than we did at that time. Notwithstanding the Fourth Circuit's disagreement with our position on this question, we remain convinced of its correctness.
A dissenting opinion was again filed by Judge Simpson and this time he was joined by four other judges. We now have the same issue before us again in this case with the benefit of the opinion of the Eighth Circuit in the Hunt case.We have carefully considered the majority opinion in that case and, with all due respect, we do not believe it adds any arguments in favor of respondent's position and the validity of his regulations that have not been presented and considered by this Court before. The full Tax Court having considered these arguments twice before in the last 2-1/2 years, and there being no changes in the law, we will adhere to our conclusions in the Fairfax,Hunt, and Baloian cases for the reasons stated in the majority opinion in the Fairfax case and decide the issue in this case for petitioner. We see no reason to repeat those reasons here. We might add that we believe the *175 arguments of Judge Webster in his dissenting opinion in the Hunt case strengthens our conclusion. We do not take lightly the reversal by another Circuit Court on this issue. But as we said in Lawrence v. Commissioner,27 T.C. 713 (1957), the Tax Court is a court of national jurisdiction and to avoid confusion should thoroughly consider the reasoning of the reversing appellate court but if it is still of the opinion that its original result was right, it should follow its honest beliefs until the Supreme Court decides the point. It was pointed out that if the Tax Court changed its position each time it was reversed by a Circuit Court it would only lead to confusion and the Court would not be properly performing its function. [4] We have since recognized that after a series of reversals with no affirmances we might promote uniformity better by bowing to higher authority, see Bankers Union Life Insurance Co. v. Commissioner,62 T.C. 661, 675 (1974), but as pointed out in Lawrence the change of position sometimes backfires.[5] *176 *177 *178 While we modified the position we took in Lawrence in our opinion in Golsen v. Commissioner,54 T.C. 742 (1970), to the extent that if the Circuit Court in which an appeal of the case would normally lie has already expressed its views on the issue in an opinion that is "squarely in point" we will follow the views of the Circuit Court in that particular case, our refusal to follow the Fourth and Eighth Circuits in this case is not controlled by Golsen. An appeal of this case will normally lie in the Fifth Circuit which has not yet expressed its *179 views on the issue. Decision will be entered for the petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, effective for the year 1975, unless otherwise indicated.↩
2. No issue has been raised about the unequal allocation of the surtax exemption in this case so we assume it was agreed to by petitioner. Nor is there any dispute about respondent's right to disallow the surtax exemption to petitioner if petitioner was a member of a controlled group of corporations as defined in sec. 1563(a)(2)↩.
3. Sec. 1.1563-1(a)(3)(i), Income Tax Regs., defines a brother-sister controlled group as two or more corporations if: "the same five or fewer persons * * * own * * * singly or in combination, stock possessing-- (a) At least 80 percent * * * [same as the statutory language]; and (b) More than 50 percent * * * [same as the statutory language]. (ii) The principles of this subparagraph may be illustrated by the following examples: Example (1). The outstanding stock of corporations P, Q, R, S, and T, which have only one class of stock outstanding, is owned by the following unrelated individuals: Corporations
Identical Individuals
P
Q
R
S
T
Ownership
A
60%
60%
60%
60%
100%
60%
B
40%
C
40%
C
40%
E
40%
Total
100%
100%
100%
100%
100%
60% Corporations P, Q, R, S, and T are members of a brother-sister controlled group."↩
4. See the dissenting opinion of Drennen, J., in Bradford v. Commissioner,60 T.C. 253, 261↩ (1973). 5. An interesting illustration of how the switching of positions because of reversals sometimes backfires occurred recently in a series of cases involving certain aspects of the taxation of life insurance companies. The issue that was common in each of the cases mentioned was whether the loading portion of deferred and uncollected premiums should be included in assets for purposes of computing the phase I tax on life insurance companies under secs. 804 and 805 of the Code as enacted by the Life Insurance Company Income Tax Act of 1959. The issue was first presented to this Court (and this Judge) in Western National Life Insurance Co. of Texas v. Commissioner, a Court-reviewed case, 50 T.C. 285 (1968), modified 51 T.C. 824 (1969), revd. 432 F.2d 298 (5th Cir. 1970). In the second opinion this Court held that the loading factor in the deferred and uncollected premiums should not be included in the company's assets for purposes of computing the phase I tax. This conclusion was contrary to the position taken by respondent in his regulations on the subject and to the opinion of the Seventh Circuit in Franklin Life Insurance Company v. United States,399 F.2d 757 (1968).Our decision was reversed by the Fifth Circuit, supra.The Fourth Circuit had also adopted respondent's position in Jefferson Standard Life Insurance Co. v. United States,408 F.2d 842 (1969). Nevertheless, in Western & Southern Life Insurance Co. v. Commissioner,55 T.C. 1036 (1971), we adhered to the position we had taken in Western National.The Sixth Circuit reversed. 460 F.2d 8 (1972). The issue again came before the Tax Court (and this Judge) in Banker's Union Life Insurance Co. v. Commissioner,62 T.C. 661 (1974). Being faced with the contrary views of four Circuit Courts, and the regulations, and no appellate decisions supporting our views, in a Court-reviewed opinion we concluded that under the circumstances the best way for us to promote uniformity was to bow to higher authority. So, because of the decisions of the Court of Appeals mentioned above, we changed our position and held that the loading factor in the premiums was includable in assets for purposes of computing the tax. Shortly thereafter in Standard Life and Accident Insurance Co. v. Commissioner,T.C.Memo. 1974-242 (1974), a Memorandum Opinion, we followed our decision in Banker's Union, which also followed the four circuits. On appeal the Tenth Circuit, 525 F.2d 786 (1975), reversed this Court in Standard Life and became the first Court of Appeals to affirm our conclusion in Western National.Certiorari was granted by the Supreme Court and in its opinion in Commissioner v. Standard Life & Acc. Ins. Co.,433 U.S. 148 (1977), the Court affirmed the Tenth Circuit and approved the position we had taken in our modified opinion in Western National Life Insurance Co. of Texas v. Commissioner,51 T.C. 824 (1969), and Western & Southern Life Insurance Co. v. Commissioner,55 T.C. 1036↩ (1971), and held that the loading factor in the deferred and uncollected premiums should not be included in assets for purposes of computing the tax.